MONROE *v.* GREEN.

Opinion delivered July 15, 1903.

STATUTES—PRESENTATION OF BILL TO GOVERNOR—TIME.—Section 15 of article 6 of the Constitution provides that "every bill which shall have passed both houses of the General Assembly shall be pre-sented to the governor; if he approves, he shall sign it, but if he shall not approve it, he shall return it with his objections to the house in which it originated, which house shall enter the objec-tions at large upon their journal, and proceed to reconsider it. * * * If any bill shall not be returned by the governor within five days, Sundays excepted, after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the General Assembly by their adjournment prevent its re-turn, in which case it shall become a law, unless he shall file the same, with his objections, in the office of the secretary of state, and give notice thereof, by public proclamation, within twenty days after such adjournment." The rules of the legislature pro-vided that no bills shall be presented to the governor for approval unless enrolled and signed by the speaker of the house and presi-dent of the senate. The General Assembly of 1903 adjourned on April 29th. On May 15th the governor's private secretary, under direction of the governor, received from the clerk of the house of representatives certain bills, including bill No. 471, for exam-ination, without the bills having been signed by the speaker of the house and the president of the senate. The next day the

secretary returned bill No. 471. On May 23 the bill, duly signed by the speaker of the house and president of the senate, was presented to the governor by the joint committee on enrolled bills, but was vetoed by him on the same day on the ground that it was not presented to him in time. *Held,* that bill No. 471 was not presented in time, and did not become a law.

Appeal from Pulaski Circuit Court.

EDWARD W. WINFIELD, Judge.

Reversed.

STATEMENT BY THE COURT.

This was a petition by B. W. Green and others to the circuit court of Pulaski county for a writ of mandamus to T. C. Monroe, as auditor of the state of Arkansas, to command him to audit a claim for sixty dollars, and issue to the petitioners a warrant on the treasury of the state for said amount, to be paid out of an appropriation made by an act of the General Assembly at the session of 1903, authorizing the plaintiffs, as the executive board of the historical committee of Arkansas Confederate Veterans, to procure the names of the officers and enlisted men of all regiments, battalions, companies, and other military organizations, who served in the Confederate army from Arkansas during the civil war, and appropriating out of the state treasury, to be expended under and by said board, $1,250, or so much thereof as might be necessary. The said board, at a regular meeting, made an order to purchase, and did purchase, office furniture, stationery and postage stamps, to prepare to commence work under said act, and paid therefor $60, and made an itemized account of same, and certified it to the auditor, and asked that he issue his warrant in their favor on the state treasurer for $60, payable, as provided, out of the appropriation in said act. The auditor refused, and hence this petition for mandamus. The petition sets out that the act was regularly passed by the General Assembly, and sets it out in full, and that it was presented to the governor on the 15th day of May, 15 days after the adjournment of the General Assembly, which occurred on the 30th day of April, 1903.

The defendant demurred, and answered the petition, admitting all the allegations thereof not specifically denied in the answer, and denied that said bill for said act, which was House Bill No. 471, was presented to the governor on the 15th day of May, and alleged

that it was not presented to him till the 23d day of May, more than 20 days after the adjournment of the General Assembly, with many other bills, and was vetoed on the ground that it was not presented to him in time—within 20 days after the adjournment of the General Assembly.

There was a trial upon the answer, and, overruling the demurrer, the court found the facts to be that the General Assembly of the state of Arkansas, at regular biennial session held in the year 1903, to-wit, on the 29th of April, 1903, passed a bill for an act to be entitled "An act to procure a roster of the officers and enlisted men who served in the Confederate.army from Arkansas;" that said bill is No. 471, and is correctly set forth in plaintiff's petition herein. The court further found that the General Assembly adjourned *sine die* at noon on the 30th day of April, 1903, and thereafter, on the 15th day of May, 1903, said bill, in words and figures as it was passed by the General Assembly, was presented to the governor of Arkansas, who did not file the same, with his objections, in the office of the secretary of state, and give notice thereof by public proclamation within 20 days after such adjournment of the General Assembly, but the same was, by said governor, filed with the secretary of state after the expiration of said twenty days, to-wit, on the 23d day of May, 1903, and is now in the office of said secretary, by reason whereof said bill became and is the law of the state, in full force and effect from and after the twenty days from such adjournment of the General Assembly, to-wit, from and after the 20th day of May, 1903. The court found the other facts stated above, and granted the prayer of the petitioners, and gave judgment in their favor for costs. To which ruling and judgment of the court in overruling his.demurrer, and in its finding of fact and declarations of law and judgment, the defendant at the time excepted, and asked to have his exceptions noted of record, which was accordingly done. He presented his bill of exceptions after his prayer for appeal had been granted, upon the court's overruling his motion for a new trial, and brought the cause here for review. In the motion for a new trial the defendant alleges:   (1) That the finding was contrary to the evidence; (2) that the judgment was contrary to the law; (3) that the court erred in awarding the peremptory mandamus.

The evidence in this cause is in effect that the bill in this case, to-wit, House bill No. 471, was tendered to Charles Jacobson, secretary to Governor Davis, on the 15th day of May, 1903, who

declined to receive it, stating to Mr. Hale (at that time acting as chairman of the committee on enrolled bills) that he did not care for the enrolled bills—that he wanted the originals, and that the originals were given him by Mr. Hale. The testimony of Miss Faust, enrolling clerk of the committee on enrolled bills, is that House Bill 471 was enrolled by her on the 12th of May, 1903, and delivered to Mr. Rodman, charman of the committee on enrolled bills, and, Mr. Rodman being absent, Mr. Hale was acting as chairman of said committee on the 15th, when he testifies that he went into the governor's office, and said to the governor that he had a lot of bills that he would like to present to him, and that the governor asked him if they had been signed by the Speaker of the House and President of the Senate, and he answered that they had not. It does not appear from Mr. Hale's testimony that when this conversation occurred he had with him the House Bill 471, nor does it appear that he presented the bill to the governor. It appears from the evidence that Mr. Jacobson was on the 15th of May sent by the governor for the bills left unenrolled by the General Assembly on its adjournment, and that some 65 or 70 of those bills were delivered to him, and his receipt as secretary to the governor was taken therefor, and that some bills were delivered to him on the same day by Mr. Hale; that these bills were taken into the governor's office on the 15th day of May, and were returned to the clerk of the House on the 16th of May, and a receipt given for them by Mr. Harrison, assistant clerk of the house. None of these bills had been signed by the speaker of the house and president of the Senate.

*Charles Jacobson,* for appellant.

The bill was not properly presented to the governor. Const., art. 6, § 15; 49 Ark. 333; 39 Cal. 189; 92 Ky. 216; 99 Mass. 636; 61 Md. 27; 52 La An. 936.

*Dan W. Jones,* for appellees.

The veto of the governor did not affect the bill. 6 Rich. (S. C.) 390; 18 Ind. 25. A bill may be presented to the governor after the general assembly adjourns. 49 Ark. 325. In computing the time in which bills may be presented to the governor after adjournment, Sundays are excluded. 52 La. An. 936; 125 Mass. 406; 15 Mass. 225; 4 Pick. 354; 7 Cowen, 147; 112 Mass. 58; 8 Metc., 496; 1 Gray, 600; 10 Allen, 494; 17 R. I. 348; 4 Cush.,

243; 1 C. & M., 444; 41 E. C. L., 245; 3 Esp., 121; 4 C. B. N. S., 264; 93 E. C. L., 262; 18 Me. 464; 41 Ga. 157; 11 L. R. A. 491.

HUGHES, J., (after stating the facts). While the bill here in controversy had been enrolled on the 12th of May, 1903, it had not been signed by the Speaker of the House and President of the Senate, as required to be done before being presented to the governor by the joint rules of the House and the Senate. Rule 7 on enrollment of bills is: "When a bill shall have passed both houses, it shall be enrolled by the enrolling clerk of the house in which it originated." Rule 8: "All bills must be enrolled and reported to each house by the enrolling committee within three days after their passage; provided, that if the reconsideration of any bill is moved in either house previous to its presentation to the governor, the enrolling committee shall hold the same until action is had upon such motion." Rule 9: "No bill, resolution or memorial shall be sent to the governor for his approval unless the same shall have been clearly and fairly enrolled, without obliteration or interlineation." Rule 10: "When a bill is enrolled, it shall be examined by a joint committee, composed of three members of each house, appointed as a standing committee for that purpose, and it shall be their duty to compare the enrolled with the engrossed bills, correct any errors they may discover, and report the same forthwith to their respective houses." Rule 11: "After examination and report by the enrolling committee, each bill shall be signed by the speaker of the House of Representatives, and then by the president of the Senate." Rule 12: "When a bill has been signed by the speaker of the House and president of the Senate, it shall be delivered to the governor by the joint committee on enrolled bills, who, through their chairman, shall report to the house in which the bill or resolution originated the day on which the same was delivered, and the report shall be entered on the journal of such house."

It does not appear that these rules were observed. The bill in question (House Bill No. 471) had not been signed by the speaker of the House of Representatives and president of the Senate, when it is claimed they were presented to the governor, on the 15th day of May, 1903.

Section 12 of article 5 of the Constitution provides that "each house [of the General Assembly] shall have power to determine the rules of its proceedings," and the General Assembly of 1903 adopted the above copied rules. Whether the governor could dispense with

the observance of these rules when he comes to act on a bill, or not, and waive compliance with them, it seems, nevertheless, that they are reasonable, and that their observance would contribute to the orderly conduct of the business of the General Assembly. The requirement that the speaker of the House and the president of the Senate shall sign a bill before it is presented to the governor is perhaps the most convenient and certain means of its authentication. But if these requirements may be dispensed with or waived, the presentation of the bill to the governor, before it can became a law, is absolutely essential. The part assigned to him by the Constitution in the enactment by the General Assembly of bills into laws is essential, and, unless he is afforded an opportunity to examine and act upon a bill, it can not become a law.

Section 15 of article 6 of the Constitution provides that "every bill which shall have passed both house of the General Assembly shall be presented to the governor; if he approves, he shall sign it, but if he shall not approve it, he shall return it with his objections to the house in which it originated, which house shall enter the objections at large upon their journal, and proceed to reconsider it. * * * If any bill shall not be returned by the governor within five days, Sundays excepted, after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the General Assembly by their adjournment prevent its return, in which case it shall become a law, unless he shall file the same, with his objections, in the office of the secretary of state, and give notice thereof, by public proclamation, within twenty days after such adjournment."

There is no question that House Bill No. 471 was duly passed by the General Assembly, and that it was enrolled on the 12th of May, 1903, and delivered to the chairman of the committee on enrolled bills, but it was not signed on the 15th of May, when it is claimed it was presented to the governor. In our judgment, the evidence fails to show that this bill was presented to the governor within 20 days from the *sine die* adjournment of the General Assembly of 1903.

It follows therefore that in the judgment of this court there was no presentation of House Bill No. 471 to the governor of the state within 20 days after the adjournment of the General Assembly of 1903, and that same did not become, and is not, a law of this state, and that the judgment of the circuit court is erroneous, being

unsupported by the facts in evidence, and it is therefore reversed, and the petition for mandamus denied.

Battle, J. The Constitution of this state provides that each house of the General Assembly of Arkansas "shall have the power to determine the rules of its proceedings." Art. 5, § 12. When adopted, such rules become a law unto the house and its committees. In the exercise of this power the Senate and House of Representatives of the Thirty-fourth General Assembly adopted rules, and, among other things, provided for the appointment of a joint committee on enrolled bills, and defined its powers and duties.

The Constitution ordains that "no law shall be passed except by bill," and that no bill shall become a law after it has passed both houses of the General Assembly until it has been presented to the governor for his approval or disapproval (art. 6, § 15) ; and the joint rules of both houses of the Thirty-fourth General Assembly provide that no bill shall be sent to the governor for his approval "unless the same shall have been clearly and fairly enrolled without obliteration or interlineation;" and that after it has been enrolled the joint committee shall examine the enrollment, and correct any errors that they may discover in it, and that thereafter it shall be signed by the speaker of the House of Representatives and the president of the Senate, and that then it shall be delivered to the governor.

The joint committee on enrolled bills alone was authorized to present bills to the governor for his approval or veto, and the rules adopted by the two houses were the measure of its authority.

The bill in question, designated as House Bill No. 471, and entitled "A bill for an act to be entitled an act to procure a roster of the officers and enlisted men who served in the Confederate army from Arkansas," passed both houses of the General Assembly. It was not presented to the governor before the final adjournment of the Legislature, which occurred on the 30th of April, 1903. It was enrolled on the 12th day of May following, except as to signing by the speaker of the House of Representatives and president of the Senate.

Appellees contend that it was presented to the governor on the 15th day of May, 1903; and concede that it was not presented to him on any day thereafter within the time prescribed for that purpose by the Constitution. The evidence shows that the governor directed his secretary to apply to the clerk of the House of Representatives for the house bills which had passed the General Assem-

bly, for examination, and that his secretary did so, and on the 15th of May, 1903, received the original bills, then in possession of the clerk, on condition that they should be returned in a day or two thereafter; and that a member of the joint committee on enrolled bills at the same time exhibited to the secretary House Bill No. 471, and the enrolled copy thereof, and that the secretary examined the original bill, and left it in the possession of the committee, but treated the copy as of no effect, because it was not signed by the speaker of the House or the president of the Senate. On the 16th of May the secretary returned the bills he had received from the clerk of the house, except two, one of which was afterwards approved by the governor, and the other was vetoed. The enrolled copy of House Bill No. 471 was not signed by the speaker of the House or president of the Senate until the expiration of several days thereafter. It was not presented to the governor on the 15th of May. His secretary was not authorized to approve or veto it, and the presentation to him was of no effect.

There are only two ways in which a bill can become a law after it has passed both houses of the General Assembly, and they are by the approval of the governor, or his failure to return or file it, after it has' been presented to him, within the time prescribed by the Constitution. He has five days, Sundays excepted, after it shall have been presented to him, in which to return it to the house in which it originated, unless the General Assembly, by its adjournment, prevents its return in that time, in which case it becomes a law, unless the governor shall file the same, with his objections, in the office of the secretary of state, and give notice thereof by public proclamation within twenty days after such adjournment. Art. 6, § 15.

The presentation of the bill to the governor is required, and the time in which to return it is allowed, for the purpose of enabling the governor to examine it and to determine whether he will approve or veto it. If the governor already has the information which an examination of the bill will afford, and has determined what action he will take, it is obvious that he can waive the enrollment and formal presentation of the bill by approving or vetoing it, as he may decide.

In *Dow* v. *Beidelman,* 49 Ark. 325, it was held that a bill that has passed both houses may be presented to the governor for his approval after the final adjournment of the General Assembly. In that event it should be presented to and acted upon by him within

twenty days after the adjournment; and, since the presentation is required to enable him to examine the bill for the purpose of determining how he shall act upon it, it is evident that it should be presented in a reasonable time before the expiration of the twenty days for that purpose, which, according to the Constitution, seems to be at least five days.

As House Bill No. 471 was not presented to the governor within the time prescribed by the Constitution, and was not approved by him, it never became a law.

I concur with the court in the judgment rendered.

RIDDICK, J.   I concur in the opinion of the court that this bill was not presented to the governor within twenty days after the adjournment of the Legislature, and therefore did not become a law. The Legislature adjourned on the 30th day of April, 1903. On the 15th day of May following, the private secretary of the governor, at the request of the governor, procured from the clerk of the house the bills in his hands that had been passed by the Legislature, and kept them one day for the purpose of inspecting them, that he might report to the governor the nature and character of the bills passed by the Legislature. Plaintiffs contend that this was a presentation to the governor, but I think the evidence shows that these bills were secured by the private secretary from the clerk merely for inspection, so that he could furnish information concerning them desired by the governor.

If this had been a presentation to the governor for his official action, the duty of the committee in respect to these bills would have been ended, for after such presentation the committee has no further control over the bills presented. The Legislature had adjourned, and, whether the governor vetoed or approved the bills presented to him, it was his duty to return them to the secretary of state, and not to the committee. Now, it is not claimed that these bills were presented by the committee, but by the clerk, who, as we shall hereafter show, was not authorized by the rules to make such presentation; but, conceding for the present that he had the authority, yet these bills were not, at the time he loaned them to the private secretary, enrolled or signed as required by the rules, and the clerk certainly did not intend to part with their control, as must be done to make a valid presentation, for he parted with them only on the promise that they would be soon returned, and they were returned the next day, and were never seen by the governor while in the hands of his secretary.

I have no doubt that the governor could, if he chose to do so, approve a bill, though it was neither enrolled or signed, and, if properly passed, it would on his approval become a law, but, though he might have done so, he did not approve this bill; and the fact that it had not been enrolled or signed is a fact tending to show that the delivery to the secretary for the purpose of inspection was not a presentation to the governor for his official action, and was not so intended. The further fact that they were delivered to the secretary under a promise from him that they would be returned next day, which promise was carried out, shows conclusively that no official presentation to the governor was intended.

Again, as before stated, the rules of the General Assembly which passed this bill require that no bill shall be presented to the governor until it has been enrolled. The rules further require that, when a bill has been signed by the speaker of the House and president of the Senate, it shall be presented to the governor, not by the clerk, but by the joint committee on enrolled bills, and that this committee shall make a report showing the day on which the presentation was made, which report shall be spread on the journal.

I call attention to these rules to show that it was the intention of the Legislature to require some record evidence of the presentation of bills to the governor and of the date of presentation.

Now, if this bill was presented to the governor, that fact should be shown by the report of the joint committee on enrolled bills. There is a report by that committee made by Mr. Hale, a member thereof, concerning the presentation of this bill 471. That report states that at the request of Charles Jacobson, private secretary to the governor, bill No. 471 was presented to him, and that, after examination of the bill at the desk of Mr. Hale, and in his presence, the bill was returned. But the private secretary is not the governor, and it needs no argument to show that the mere exhibition of a bill to him at the desk of a member of the House and his inspection of it there was not a presentation to the governor. The report of Mr. Hale then proceeds to state that on the 23d day of May, 1903, at 11 o'clock a. m., this bill, with others, "was presented to the governor." It thus appears from the report that the presentation to the governor was made, not on the 15th, but on the 23d day of May, 1903. This statement of the report coincides with public proclamation of the governor vetoing the bill, in which he states that this bill was not presented to him until after the 20th of May, 1903. This is the record evidence of the presentment.

The report of the committee ignores entirely the transaction between the private secretary and the clerk by which the private secretary obtained possession of the bills for a day to inspect him; thus showing, as we have found from the other evidence, that the clerk was not acting for the committee in that matter. It was not the duty of the clerk to present bills to the governor, and the committee showed by its report that it did not regard the loan of the bills by the clerk to the secretary for inspection as a presentation of the bills to the governor for his official action. To make a valid presentation the action of the committee presenting the bill must be such as to notify the governor that the committee intends to deliver it to him for his official action thereon, but in my opinion the testimony of the witness, as well as the report of the governor, shows conclusively that this bill was not thus presented within the time required by the Constitution, and it therefore did not become a law.

BUNN, C. J., (dissenting). This is a petition for the writ of mandamus to compel said auditor to issue his warrant on the treasurer of the state for the sum of sixty dollars, which petitioners alleged he was required by law to issue on their demand, upon a fund of $1200 appropriated to their use by the Legislature of 1903, for the purpose of assisting the secretary of war in making up a roster of the officers and enlisted men in the late Confederate army, from the state of Arkansas. The auditor refused to draw his warrant as demanded, claiming that the bill making said appropriation never in fact became a law, the same having been vetoed by the governor.

The bill, it appears, was regularly passed through both houses of the General Assembly on the 29th day of April, 1903, the day before the final adjournment of that body, on the 30th day of April, 1903. It appears from the record in this case that about one hundred other bills also passed both houses, none of which had been presented to the governor for his approval or disapproval before said adjournment. The General Assembly adjourned leaving its clerical force and the joint committee on the enrollment of bills to finish up its unfinished work. These officers set about the work of having this great number of bills duly enrolled and put in shape to be presented to the governor. It was soon found, however, that the enrolling clerk could not do the work in time, within the 20 days allowed by the Constitution for the governor to file and publish by

proclamation his objections to any of them; and then began arrangements to expedite the work, so as to have it done in time. Much evidence *dehors* the record was taken on the question of whether or not the bill in question, with the others, had ever been presented to the governor for his examination and action thereon; the petitioners contending and attempting to show that such presentation was in fact made of all of said bills on the 15th of May, 1903, while the respondent contended that the bills were never in fact presented for that purpose at any time.

Before proceeding to discuss the evidence, however, I have this to say as to the law of the case, from a constitutional standpoint: In my opinion (if it were a new question), no bill that has not been presented to the governor for his examination before the final adjournment of the General Assembly can ever become a law under the Constitution of this State. The constitutional provision on the subject is as follows, to-wit:

"Every bill which shall have passed both houses of the General Assembly shall be presented to the governor; if he approve it, he shall sign it, but if he shall not approve it, he shall return it, with his objections, to the house in which it originated, which house shall enter the objections at large upon their journal, and proceed to reconsider it. If, after such reconsideration, a majority of the whole number elected to that house shall agree to pass the bill, it shall be sent, with the objections, to the other house, by which likewise it shall be reconsidered; and if approved by a majority of the whole number elected to that house, it shall be a law; but in such cases the votes of both house shall be determined by 'yeas and nays,' and the names of the members for or against the bill shall be entered on the journals. If any bill shall not be returned by the governor within five days, Sundays excepted, after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the General Assembly, by their adjournment, prevent its return, in which case it shall become a law, unless he shall file the same, with his objections, in the office of the secretary of state and give notice thereof by public proclamation within twenty days after such adjournment." Sec. 15, art. 6, Constitution of 1874.

It will be readily seen that the "presentation to the governor" contemplated in the language of the latter clause of this section is made before adjournment, and no provision is made for such "presentation" after the General Assembly has adjourned. The twenty

days is given to the governor that he may consider the nature and character of the bill, and file the same with his objections to it, not his objections to the manner or the time of its presentation, for this formality must have been complied with before the adjournment of the General Assembly. If the governor have no objection to the bill itself, intrinsically, the same having been in due time presented to him, he need not approve it, for it becomes a law *ipso facto* at the end of the time allowed him to return it to the proper officer. The presentation to the governor is one of the essential things to be done by the joint enrolling committee, and the joint rules of the two houses require that the enrolled bills shall be signed by the speaker of the House and president of the Senate before it is presented to the governor for his examination; but the governor may doubtless waive a strict compliance with this part of the joint rules, if the exigencies of the occasion require it, so that the bill is properly signed by the officers named before it shall be treated as a law. But, unless the bill is presented before adjournment, the governor has nothing and can have nothing before him to examine, for the unpresented bills are then dead, and can not in my opinion be brought to life again by any act of the governor or any one having to do with it.

No proof of the correctness of this proposition is needed, other than the language itself of the section of the constitution quoted. The argument is rendered conclusive on the subject by the corresponding provision of each of the several constitutions of this State. The Constitution of 1836 reads thus: "Every bill which shall have passed both houses shall be presented to the governor. If he approve it, he shall sign it, but if he shall not approve it, he shall return it, with his objections, to the house in which it shall have originated, who shall enter his objections at large upon their journals, and proceed to reconsider it. If, after such reconsideration, a majority of the whole number elected to that house shall agree to pass the bill, it shall be sent, with the objections, to the other house, by which, likewise, it shall be reconsidered, and if approved by a majority of the whole number elected to that house, it shall be a law; but in such cases the votes of both houses shall be determined by yeas and nays, and the names of the persons voting for or against the bill shall be entered on the journals of each house respectively. If any bill shall not be returned by the governor within three days, Sundays excepted, after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless

the General Assembly, by their adjournment, prevent its return; in such case it shall not be a law." If the General Assembly, by its adjournment, prevented the return of the bill by the governor to the house in which it originated, it was dead, and did not become a law under any circumstances.

The identical provision is in the Constitution of 1861 and 1864. The Constitution of 1868, with some minor differences in other respects, was identically the same, with the addition, that "the governor may approve, sign and file in the office of the secretary of state, within three days after the adjournment of the General Assembly, any act passed during the last three days of the session, and the same shall become a law." Necessarily, no veto could have any effect after the adjournment of the General Assembly, for all bills passed were dead, unless such as were approved within three days after the adjournment. But no provision was made for the presentation of bills to the governor, except for such presentation as should be made when the General Assembly was in session, and the governor's veto might be overridden by the General Assembly, which, of course, could not be done except while in session.

Under the Constitution of 1868, the governor might approve a bill within three days after the adjournment, and it would become a law. Under the Constitution of 1874, his approval after adjournment amounts to nothing, for without his disapproval and proclamation the bill becomes a law of itself. But the presentation of the bill for his examination must be made before the adjournment, and if five days before, and he does not return it within the five days, the bill becomes a law, unless the adjournment curtail the five days allowed him after presentation, in which case, he has twenty days to further consider the matter, formulate his objections, and make and publish his proclamation.

Substantially the same provision is contained in the Federal Constitution, and yet it is well known and understood that no bill can become a law without presentation to the president before the adjournment of Congress, and his action also had before such adjournment. The reason of such a rule is so obvious as to make its application almost necessarily universal. It would tend, and was intended, to prevent such an accumulation of uncompleted bills as is exhibited in this unfortunate controversy. It would, in the second place, give the General Assembly the opportunity, as it has the right and duty, to override the governor's veto action in any given case—an opportunity the General Assembly has no power to

deprive itself of, further than is expressly waived in the Constitution in behalf of the public.

If this was a new question, I would unhesitatingly hold that no bill presented to the governor after the adjournment of the General Assembly could ever, by the action of any one, become a law; but the court's attention was in the outset called to the decision in. the case of *Dow* v. *Beidelman,* 49 Ark. 325. It is held expressly in the opinion in that case "that the Constitution (art. 6, § 15) does not require all bills to be presented to the governor before the adjournment of the Assembly, and the first presentation of the bill being ineffectual, because it was not the same that had been passed, the legislative officers had the power after the adjournment to submit to the governor for his approval a correct enrollment of the bill, as it was passed." The statement itself of this ruling but indicates something peculiar in the state of facts upon which the rulings were made, and the trained professional man, being thus put on his guard, will not be ready to adopt the decision as a precedent in ordinary cases of bills failing to be presented to the governor, after adjournment of the General Assembly. Quoting further from the first syllabus in the case, the facts appear therefrom as follows: "The act was regularly passed by both houses of the General Assembly; but in its enrollment two provisions which had been reported by the conference committee and incorporated in the act by way of amendment were omitted. In this form it was sent to the governor, and was by him approved on March 30. The next day the General Assembly adjourned. After the adjournment the omission was discovered. A correct enrollment was then made, and the bill, signed by the president of the Senate and the speaker of the House, was again laid before the governor, who approved it on April 4th." This of course was a misprision of the enrolling committee, and the question with the officials, who were confronted with such a plain mistake or oversight, was, was it not better to correct the obvious error thus occurring than to discard a solemn act of the General Assembly by a refusal to make the correction? The governor at the head of the executive department, and the president of the Senate and speaker of the House representing the legislative department, all of whom possess a sound discretion in a doubtful matter to determine their own course of action therein, probably did the right thing under the circumstances of that case, and I have no criticism of that decision so far, but I can not

think this state of facts authorized this broad language of the decision: "Nothing in this language [the constitutional provision] implies that all bills must be transmitted to the governor before the adjournment of the Assembly. He is prevented by the adjournment from returning the bill, whether the bill is in his hands before it adjourns or reaches his hands afterwards." The context, in my opinion, shows the implication to be a necessary one, and that the court's enunciation was erroneous, and consequently entailed a Pandora's box of evils upon the state, of which we now have ocular demonstration.

But I am reminded that, since the rendition of that decision in 1887, every Legislature has taken this court at its word as therein employed, and so has every governor down to this good day, and adopted a custom or contracted a habit of passing bills and leaving them to be presented by officers detailed for that purpose to the governor for his action after the adjournment, and treating such bills in a way as will give them life as laws; that, if the validity of that custom is now to be broken in upon, or that habit declared void, many bills passed within the last 16 years would be called in question, presumably all expressing and exhibiting the will of the people, and that therefore the greatest confusion and injustice would prevail. There is something in that course of reasoning, and I would be the first to bow to its mandatory character, where only my own fallible opinion is in the other end of the scale. That being the status of the case, the only remaining question is one of fact— that is, the question is mainly one of fact.

I have said that, soon after the adjournment of the General Assembly, it began to be seen that, unless some more expeditious method was adopted to transact the business left over, the legislative officers could not complete the work before them. In this dilemma, the governor and his private secretary were called upon to assist in devising the necessary plans to transact the business before the time limit of the governor's action should expire— the 20th of May, 1903.

It is impossible and unnecessary for me to recite in detail all the evidence adduced pro and con, especially as I am inclined to look with disfavor upon evidence *dehors* the record in such a matter. I am quite ready to say that in my opinion that the private secretary of the governor is the general and official agent of the governor in transacting all the business for him as such, at least in all he did in the premises in this instance, and I am of the

opinion from the testimony also that the governor was quite willing to aid the legislative officers in any way he could lawfully in expediting the business, so that the regularly passed and unobjectionable acts of the Legislature should become laws, and I think that the evidence shows, notwithstanding some seemingly conflicting statements of witnesses here and there, conflicts more apparent than real, that the suggestion of the enrolling clerk was acted upon to the effect that the governor could run over the list of the bills, select those he wished to veto, let the others become laws by his silence, have the bills desired to be vetoed readily enrolled for the signatures of the speaker of the House and president of the Senate as they should come in from their homes. I think this was the tacit understanding, if not the express understanding, when the bills were received and reecipted for on the 15th of May by the governor's private secretary. At all events, apparently, that plan was acted upon to some extent, not in the strictest manner, perhaps, but in a way that ought to give validity to the presentation then and there made, and that, there being no mandatory direction in the Constitution as to how the unfinished business should be transacted after the adjournment, each official involved had a sound discretion to act as he thought best to reach the end in view in conjunction with the others, and to waive all privileges and rights really personal to himself and affecting his own convenience. The circuit court found the proper presentation to have been made. I see nothing to interfere with his findings. The bill in question (I have nothing to say as to the others) seems to have been inadvertently vetoed, or vetoed for want of form, there being no intrinsic objection to it. Under the circumstances, I think every doubt should be solved in its favor. I am also of opinion that Sundays are to be included in the twenty days, and consequently that the vetoes are ineffective.