## SIMON v. STATE.

### Opinion delivered June 15, 1908.

1. STATUTES—AUTHENTICATION.—The Constitution does not prescribe the manner in which a bill shall be authenticated before being presented to the Governor for his approval, or that it shall be authenticated at all. (Page 528.)

2. SAME—EFFECT OF FAILURE TO AUTHENTICATE.—Although the ·Constitution impowers each house of the General Assembly to fix its rules of procedure, and a joint rule of the two houses provides that each bill should be signed by the Speaker of the House and President of the Senate, the validity of a statute does not depend upon compliance with such rule requiring authentication by the several presiding officers of the two houses. (Page 528.)

Appeal from Garland Circuit Court; *W. H. Evans*, Judge; affirmed.

*E. W. Rector, C. V. Teague* and *Greaves & Martin,* for appellant.

At the time of the passage of the act under which appellants were prosecuted, the President of the Senate had become the Governor of the State because of the illness of the Governor, and thereafter continued to perform the duties of a senator and president of the senate. When he assumed the duties of Governor, his power and right to exercise the duties of President of Senate were suspended during such time as he was in the discharge of the duties of Governor. During this time his presiding over the Senate was a usurpation of authority. The act was therefore not passed in the manner required by the Constitution. Art. 4, § § 1 and 2, Const.; 72 Ark. 567; *Id.* 180; Senate Journal, 1907, pp.. 118, 119; art. 5, § 17, and art. 6, § 12, Const.; 2 Ark. 282; 10 Ark. 142; 7 Me. 412; 55 N. Y. 74; 23 Nev. 216; 11 Ore. 389; 97 N. Y. 271; 77 N. Y. 503; 2 Hill (N. Y.), 93; Dillon, Mun. Corp. § 164; Brock. 102; 36 Miss. 292; 97 N. Y. 271; Joint Rules, 7, 8, 9, 10, 11 and 12, pp. 114, 115, Journal House Rep. 1907; see also 71 Ark. 531.

*William F. Kirby*, Attorney General, and *Daniel Taylor,* Assistant, for appellee.

1. The Senate Journal shows that the bill received on final passage the votes of twenty-seven of the thirty-five senators com-

posing that body, which assured the passage of the bill. Art. 5, § 21, Const. The rule requiring each bill before presentation to the Governor to be verified by the signatures of the presiding officers of the two branches of the Legislature is a rule of procedure of the General Assembly, binding upon them only and not upon the Governor. When the bill was presented to, approved and signed by him, it became a law. Art. 6, § 15, Const.; 71 Ark. 536.

The validity of an act can not be tested upon an agreed statement of facts, 83 Ark. 448; 86 Ark. 69.

McCULLOCH, J. This appeal involves an attack on a statute of this State approved February 27, 1907, making it unlawful to bet on a horse-race. Its validity is questioned on the ground that the bill was not properly certified by the President of the Senate before presentation to the Governor for his approval. The bill originated in the Senate, and was passed by that branch of the Legislature on February 4, 1907, and was returned to the Senate on February 18, 1907, after having been duly passed by the House. On February 11, 1907, Hon. John S. Little certified his inability, by reason of illness, to perform the duties of Governor, and Hon. John I. Moore, the President of the Senate, pursuant to the constitutional mandate, assumed the powers and duties of the office of Governor. Art. 6, § 12, Const. 1874. He attested the bill as President of the Senate, and approved it as Governor.

It is contended that when the President of the Senate assumed to discharge the duties of Governor he ceased to be President of the Senate for the time, that he therefore had no authority to attest the bill; and that for want of proper authentication the bill did not become a law.

There is nothing in the Constitution of the State prescribing the manner in which a bill shall be authenticated before being presented to the Governor, or that it shall be authenticated at all. The Constitution merely provides that "every bill which shall have passed both houses of the General Assembly shall be presented to the Governor; if he approves it, he shall sign it; but if he shall not approve it, he shall return it, with his objections, to the house in which it originated." Art. 6, § 15.

The Constitution does, however, impower each house of

the General Assembly to fix its rules of proceeding, and the joint rules of the Senate and House provided that each bill should be signed by the Speaker of the House of Representatives and President of the Senate after examination by and report of the enrolling committee, and that when so signed it. should be delivered to the Governor by tne joint committee on enrolled bills. The validity of the statute, when the bill has been duly presented to and approved by the Governor, does not depend upon compliance with the rule requiring authentication by the several presiding officers of the two houses. *Railway Co.* v. *Gill,* 54 Ark. 101.

Authentication, in accordance with the rules, by the presiding officers of the two houses is not conclusive evidence of the passage of a bill or of the contents of the bill as passed, and it may be contradicted or controlled by the entries on the journals of the two houses. *Smithee* v. *Garth,* 33 Ark. 17; *Smithee* v. *Campbell,* 41 Ark. 471.

It would therefore be unreasonable to say that a lack of attestation or an improper attestation of a bill would invalidate the statute.

If the bill was in fact delivered to the Governor and was approved by him, it thereupon became a law without the signature of the President of the Senate. *Moore* v. *Green,* 71 Ark. 527.

It is unnecessary in this case to go into the question as to the effect of the assumption by the President of the Senate of the duties of Governor upon his continued incumbency of the former office. In this instance he, in fact, continued to act as President of the Senate while performing the duties of Governor, and as such President he attested the bills passed by the two houses of the General Assembly. No vacancy in the office of President of the Senate was declared, and no effort was made to supplant the President while he was acting as Governor. He was the *de facto* President of the Senate, and his acts as such in attesting bills were valid, even if it be conceded that his right to act in that capacity was suspended while he discharged the duties of Governor.

In no view of the case is the statute in question open to attack on the grounds named.

Judgment affirmed.