The Honorable Mike Huckabee Governor of Arkansas State Capitol Little Rock, Arkansas 72201
Dear Governor Huckabee:
This is in response to your request for an expedited opinion on "whether the absence of the Speaker's signature from Senate Bill 676 in any way impairs its legality." The bill is entitled:
 AN ACT TO ESTABLISH THE EIGHTY-FIRST SESSION PROJECT ACCOUNT WITHIN THE GENERAL IMPROVEMENT FUND; TO DEFINE THE MONIES TO BE AVAILABLE IN SUCH ACCOUNT; AND TO DEFINE THE PURPOSES FOR WHICH MONIES MAY BE MADE AVAILABLE FROM THE GENERAL IMPROVEMENT FUND; AND FOR OTHER PURPOSES.
The bill states in Section 1 that it may be cited as the "General Improvement Distribution Act of 1997."
Although it is not indicated in your request, it is my understanding that the 81st General Assembly enacted the bill on Saturday, April 5, and has presented it to you for your approval or disapproval as is required under Arkansas Constitution, art. 6, § 15.
Your question focuses on the absence of the signature of the Speaker of the House of Representatives on the bill. You note that Section 10 of the Joint Rules of the House of Representatives and the Senate (adopted in HCR 1029, 81st Gen. Assem. 1997), requires the following:
 Signing of Bills After examination and report by the committee responsible for enrolling bills, each bill shall be signed by the Speaker of the House of Representatives and then by the President of the Senate. Each page of a bill shall be signed by the Speaker of the House of Representatives on the right margin, and shall be signed by the President of the Senate on the left margin of each page. The Speaker of the House of Representatives and the President of the Senate shall manually sign each page of each bill, or may provide, at their option and under their supervision, for the affixing thereto of their facsimile signature in the manner and procedure provided by Act 69 of 1959 (Ark. Code of 1987 annotated 21-10-101 through 21-10-106).
You note that the signature of the President of the Senate (Lieutenant Governor Winthrop D. Rockefeller) appears on the left margin of each page of the bill in compliance with the rule above, but that the signature of the Speaker of the House of Representatives is "missing from this bill." You thus inquire whether the absence of the Speaker's signature "in any way impairs [the bill's] legality," citing concerns about a possible taxpayer's illegal exaction lawsuit.
It is my opinion that the absence of the signature of the Speaker of the House of Representatives on a bill, even if required by the Joint Rules of the House and Senate, does not affect the validity of the bill. The Arkansas Supreme Court has held as much on more than one occasion.
The most apposite case appears to be Simon v. State, 86 Ark. 527,111 S.W. 991 (1908). At issue in Simon was a bill making it unlawful to bet on a horse race. Its validity was questioned "on the ground that the bill was not properly certified by the President of the Senate before presentation to the Governor for his approval." Id. at 528. The court first noted that:
 There is nothing in the Constitution of the State prescribing the manner in which a bill shall be authenticated before being presented to the Governor, or that it shall be authenticated at all. The Constitution merely provides that `every bill which shall have passed both houses of the General Assembly shall be presented to the Governor; if he approves it, he shall sign it; but if he shall not approve it, he shall return it, with his objections, to the house in which it originated.' [Citing Arkansas Constitution, art. 6, § 15.]
86 Ark. at 528.
At the time of the relevant facts in Simon, the joint rules of the Senate and the House provided that each bill should be signed by the Speaker of the House of Representatives and President of the Senate after examination by and report of the enrolling committee. The court held that the "validity of the statute, when the bill has been duly presented to and approved by the Governor, does not depend upon compliance with the rule requiring authentication by the several presiding officers of the two houses." Id. at 529. The court went on to note that:
 Authentication, in accordance with the rules, by the presiding officers of the two houses is not conclusive evidence of the passage of a bill or of the contents of the bill as passed, and it may be contradicted or controlled by the entries on the journals of the two houses. [Citations omitted.]
 It would therefore be unreasonable to say that a lack of attestation or an improper attestation of a bill would invalidate the statute.
86 Ark. at 529. See also Pelt v. Payne, 90 Ark. 600, 30 S.W. 426, 134 Am. St. Rep. 45 (1895) (there is no constitutional requirement that the journal shall show that the bill was enrolled and signed); and Monroe v.Green, 71 Ark. 527, 76 S.W. 199 (1903), Riddick, J., concurring (governor could, if he chose to do so, approve a bill, though it was neither enrolled or signed as required by the rules, and if properly passed, it would on his approval become a law). See also generally, 95 A.L.R. 278, "Effect of failure of officers of legislature to sign bills as required by constitutional provisions," and Sutherland, Statutory Construction, § 14.08 (5th Ed.) at 733-734. The same rule appears to apply even if the bill is vetoed and subsequently overridden. Cf. generally, Application ofMcGlynn, 58 N.J. Super. 1, 155 A.2d 289 (1959).
The court in Simon, for its holding, relied upon the case of RailwayCompany v. Gill, 54 Ark. 101, 15 S.W. 18 (1891), aff'd 156 U.S. 649, 667
(1895), which appears to be the seminal case on the broader constitutional doctrine holding that the General Assembly has complete discretion, subject only to constitutional limitations, to make and interpret its own rules. The power to make such rules emanates from Arkansas Constitution, art. 5, § 12. The court in Gill, addressing a defense based upon a statute's alleged invalidity for the legislature's failure to follow its rules in enacting it, stated:
 The joint rules of the general assembly were creatures of its own, to be maintained and enforced, rescinded, suspended, or amended, as it might deem proper. Their observance was a matter entirely subject to legislative control and discretion, not subject to be reviewed by the courts.
54 Ark. at 105-106.
Likewise, in Bradley Lumber Co. of Arkansas v. Cheney, 226 Ark. 857,295 S.W.2d 765 (1956), the court stated:
 Subject to the restrictions imposed by the constitution each branch of the legislature is free to adopt any rules it thinks desirable. It follows, both as a matter of logic and as a matter of law, that each house is equally free to determine the extent to which it will adhere to its self-imposed regulations. For this reason it was held in Railway Co. v. Gill, 54 Ark. 101, 15 S.W. 18, 11 L.R.A. 452, that the validity of an act is not affected by the legislature's disregard of its own rules. . . .
226 Ark. at 859-860. See also generally, Reaves v. Jones, 210 Ark. 257,515 S.W.2d 201 (1974).
It appears that the court decisions summarized above are still controlling law on the question. My expedited research has disclosed no subsequently adopted constitutional provision or statutory requirement that bills such as S.B. 676 be signed or authenticated by the Speaker of the House of Representatives in order to be legally valid, assuming that compliance is had with all other constitutional and statutory provisions in its passage.[1]
It is therefore my opinion, assuming compliance with all relevant constitutional provisions and statutes, that the absence of the signature of the Speaker of the House of Representatives on S.B. 676 will not alone affect its validity.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] It should be noted, however, that A.C.A. § 10-2-116 (Repl. 1996) requires an authentication certificate signed by both the Speaker of the House of Representatives and the President of the Senate in cases where the Governor has returned a bill with his objections (vetoed it), and it is thereafter reconsidered and passed by the requisite majority in both houses (overridden).