## RAILWAY COMPANY *v.* GILL.

Decided January 3, 1891.

1. *General Assembly—Rules.*

   The observance by the general assembly of the rules adopted by it for the conduct of its business is a matter entirely within its control and discretion, not subject to be reviewed by the courts.

2. *Railway passenger tolls—Penalty for overcharge—Voluntary payment.*

   In a suit under the act approved April 4, 1887, regulating the rates of charge for the carriage of passengers by railroads, a voluntary payment will not preclude a recovery of the penalty for an overcharge.

3. *Cumulation of penalties.*

   Under the act a person who has paid several overcharges may recover the penalty for each overcharge, although he went upon the train solely for the purpose of accumulating penalties.

4. *Congressional grants—Immunity from State regulation.*

   The various acts of Congress, declaring defendant's railroad to be a post and military route and national highway for postal, military and all other governmental service and granting lands and a right of way over government lands, confer no immunity from State regulation of passenger tolls.

5. *Constitutional law—Regulation of passenger rates.*

   Under the present constitution (article 12, sections 6–11) the general assembly may alter or repeal any general law regulating the rates of charges for the carriage of passengers, without impairing the obligation of any ·contract; in such manner, however, that no injustice shall be done to the corporators.

6. *Consolidated railway—Regulation of tolls.*

   A consolidated railway company cannot complain of the injustice of an act regulating railway passenger tolls, because of its effect upon one of its constituent roads. The operation of the act must be judged by its effects on the net earnings of the entire road.

7. *Classification of railroads—Effect of act upon members of a class.*

   An act classifying railroads according to their length and providing a schedule of passenger tolls for each class must be judged, as to its effect upon any given class, by its effect upon railroads of that class operated under usual or ordinary conditions.

APPEAL from *Washington* Circuit Court.

J. M. PITTMAN, Judge.

John B. Gill filed a complaint against the St. Louis and San Francisco Railway Company, alleging in five separate counts that, on five several occasions, defendant, operating a railroad in the State more than seventy-five miles long, had charged him five cents per mile, being in excess of the maximum charge allowed by the statute. Defendant filed an answer in eleven paragraphs. The first paragraph denied the facts alleged. A demurrer to the other ten paragraphs of the answer was sustained. Their substance is stated in the opinion. There was a trial upon the issue raised by the first paragraph of the answer. The court found for plaintiff upon each count of the complaint, awarded judgment for $375, and allowed an attorney's fee of $50. Defendant appealed.

The act referred to in the complaint is as follows:

" *Be it enacted by the General Assembly of the State of Arkansas :*

"SECTION I. That the maximum sum which any corporation, officer of court, trustee, person or association of persons, operating a line of railroad in this State, shall be authorized to charge and collect for carrying each passenger over such line within this State, in the manner known as first-class passage, is hereby fixed at the following named rates :

" On line of railroad fifteen miles or less in length, eight cents per mile. On lines over fifteen miles in length, and less than seventy-five miles in length, five cents.

" On lines over seventy-five miles in length, three cents per mile. And for carrying children in charge of an adult, there may be charged and collected one-half of the above-named rates for such of said children as may be under the age of twelve years and over the age of five years ; and for such of said children as may be under the age of five years no charge whatever shall be made beyond what is collected from the adult or adults who may have charge of them ;

*Provided*, That any railroad company may charge the sum of twenty (25) cents for the carriage of any passenger who may get on or off a train at other than a regular station ; *Provided, further :* All passengers who may fail to procure regular fare tickets shall be transported over all railroads in this State at the same rate and price charged for such tickets for the same service.

" The number of miles in any railroad shall be held to include the entire length of said railroad, whether wholly within this State or extending beyond the limits thereof, and any branch railroad operated by the same person or · corporation operating any main line, shall be held to constitute a part of said main line for the purpose of determining the length of said main line for the purposes of this act.

" SEC. 2. That each passenger who shall pay fare at the rate specified in section one, shall be entitled to have transported along with him, on the same train, and without any additional charge, one hundred and fifty pounds of baggage to consist of such articles as are usually carried by ordinary persons when traveling ; and payment of fare, at the rate specified in section one, shall entitle the person paying the same to be transported, without additional charge, over any bridge or ferry, or through any tunnel, that may be used by the persons aforesaid, to make a continuous line between the points on said line of railroad between which the passenger may have acquired the right to be carried by payment of fare at the rate aforesaid.

" SEC. 3. Any of the persons or corporations mentioned in section one, that shall charge, demand, take, or receive from any person or persons aforesaid any greater compensation for the transportation of passengers than is in this act allowed or prescribed, shall forfeit and pay for every such offense any sum not less than $50, nor more than $300, and costs of suit, including a reasonable attorney's fee, to be taxed by the court where the same is heard on original action, by appeal or otherwise, to be recovered in a suit at

law by the party aggrieved in any court of competent jurisdiction. And any officer, agent or employee of any such person or corporation, who shall knowingly and wilfully violate the provisions of this act, shall be liable to the penalties prescribed in this section, to be recovered in the same manner.

" SEC. 4. That all acts and parts of acts in conflict with this act be and the same are hereby repealed, and that this act take effect thirty days after its passage.

" Approved April 4, 1887."

*B. ·R. Davidson*, for appellant. *John O'Day* and *E. D. Kenna* of counsel.

1. The legislature could not compel appellant to carry passengers for less than the actual amount expended in performing the service incident thereto. 94 U. S., 155; 21 A. & E. R. Cases, 14; Mansf. Dig., sec. 5473; 125 U. S., 680; 116 U. S., 307, 325; 128 *id.*, 174; 123 *id.*, 661.

2. Appellant was not a *bona fide* passenger, and hence not within the meaning of the pretended law. Laws of this kind are not intended for the purpose of encouraging a party to speculate in penalties. 46 N. Y., 544.

3. The act discriminates between roads of the same class. Appellant's road was less than seventy-five miles in length.

4. The overcharge was entirely for carrying plaintiff over the bridge, and it follows that, if such rate was authorized, there was no offense. Congress had the right to regulate the rate of fare or toll for crossing this bridge. It delegated the power to the secretary of the interior, and he fixed the rate. The act, in so far as it attempts to regulate the charges made on this bridge, is in conflict with the act of Congress, and is void. 6 Wall., 35; 12 How., 229; 105 U. S., 470; 109 U. S., 385; 3 Wall., 713; 10 Wall., 557; 13 How., 565; 18 *id.*, 421; 10 Wheat., 316.

5. The act was never properly enacted.

*Dan W. Jones* for appellee.

1. This case is not distinguishable from that in 49 Ark., 329, and 125 U. S., 680. When the St. Louis, Arkansas and

Texas Railway consolidated with two other corporations, it was not the same corporation, but became *functus officio*, and a new corporation came into existence. 41 Ark., 436; *ib.*, 509; 112 U. S., 609; 44 Ark., 17; 49 *id.*, 325; 125 U. S., 680. Hence evidence as to the cost of the St. Louis, Arkansas and Texas Railway was not admissible in evidence.

2. The Arkansas statute differs from that construed in 46 N. Y., 644. See Mansf. Dig., secs. 5014–5019. The law intended a penalty for each violation, which may be recovered in one suit. 3 Hill, 527; 4 T. R., 229; 3 *ib.*, 98; 1 Chit. Pl., 181; Cowen's Tr., 561, 2d ed.; `and see 46 N. Y., 660.

3. It is admitted that appellant's road is more than 75 miles in length.

4. All the objections urged against this act are answered by 49 Ark., 329, and 116 U. S., 325.

5. The allegation that appellee *voluntarily* paid the overcharge is no defense. The *charging, demanding, taking or receiving* more than three cents a mile fixed the company's liability, as a punishment for the violation of the act, and is within the police power of the State. 49 Ark., 455; 46 N. Y., 644.

HEMINGWAY, J. The questions presented by this appeal depend upon the sufficiency of ten several paragraphs of the answer of the defendant below, appellant here, to each of which a demurrer was sustained. There was a trial upon one paragraph, and verdict and judgment for the plaintiff.

In the second paragraph it was alleged that the act of April 4, 1887, entitled an act to regulate the rates to be charged by railroads for the carriage of passengers, was not passed by the several houses of the general assembly in accordance with their joint rules, and that the bill as passed did not contain any provision limiting the rates that could be charged for the transportation of passengers. The joint rules of the general assembly were creatures of its own, to be

1. Legislative rules.

maintained and enforced, rescinded, suspended, or amended, as it might deem proper. Their observance was a matter entirely subject to legislative control and discretion, not subject to be reviewed by the courts. That the act as passed contained a clause limiting passenger rates, was settled by this court in *Dow* v. *Beidelman*, 49 Ark., 325.

2. Voluntary payment of overcharge. The substance of the ninth paragraph is that the appellee voluntarily paid the alleged overcharge, and that he therefore could not recover. Whether the conclusion would follow if he sought to recover the amount of the overcharge, we need not decide; a voluntary payment of the overcharge does not preclude a recovery of the statutory penalty.

3. Cumulation of penalties. The eighth paragraph sets up that the plaintiff went upon the defendant's train, not for the purpose of ordinary business or pleasure, but for the sole purpose of accumulating penalties against it, and that it would be against public policy to allow him to maintain this action, and thereby speculate in penalties. The act was not intended to provide a compensation for the injured passenger; but to deter railroad companies from taking excessive fares by punishing every such act. Each overcharge is in violation of law, and every payment of it is a legal wrong to the party making it, who is thereby aggrieved within the meaning of the act, and by its express terms entitled to sue. *Fisher* v. *Ry. Co.*, 46 N Y., 644; *Parks* v. *Nashville, etc., Ry.*, 13 Lea, 1; S. C., 18 A. & E. R. R. Cas., 404.

4. Congressional grants— Immunity from State regulation. In the sixth paragraph it is alleged that, by virtue of various acts of Congress, the line of defendant's road is declared a post and military route and national highway for postal, military and all other governmental services, and is subject to be regulated only by act of Congress ; that it became such by grants of land and right of way from the government, and is thereby exempt from State regulation. We do not appreciate the force of this defense. We do not understand that a grant of lands or of a right of way over lands by the government confers immunity from State regulation upon its grantee.

The remaining paragraphs of the answer contain objections by which, as it is claimed, the act in question is shown to be in conflict with the provisions of the State and Federal constitutions. As they contain many repetitions of the same allegations, varying only in the different paragraphs in respect of form, we will state and consider them together. They are substantially as follows: That the alleged overcharges were made for passage on that part of the defendant's road formerly owned by the St. Louis, Arkansas and Texas Railway Company in Arkansas; that said company was duly organized under the general laws of the State of Arkansas in 1880; that, by the laws then in force, and which were a part of its contract with the State, it was provided that said corporation, its successors or assigns, might fix such rates of fare as to it should seem proper, but that the legislature might alter or reduce its rates, provided that no such reduction should be made until the net proceeds of its road for one year had exceeded 15 per cent. of its capital actually paid in; and provided further, that such rates should not be so changed as to produce a profit below 15 per cent. as aforesaid; that, in accordance with the general laws of the States of Arkansas and Missouri, said St. Louis, Arkansas and Texas Railway Company, on the 10th day of February, 1881, was consolidated with two other corporations, in the name of the St. Louis, Arkansas and Texas Railway Company, Consolidated, which latter company succeeded to all the property, power, privileges, rights and immunities which belonged to either of the consolidating companies.

That, at the time of the consolidation, the road of the original Arkansas corporation had not been completed, and that it and the consolidated corporation were without means to complete the road.

That, on the 2d day of February, 1882, the consolidated company, by the authority and in pursuance of the general laws of the States of Arkansas and Missouri, sold and conveyed to the appellant all its railroad in said State, together

with all its rights, privileges, franchises and immunities thereunto belonging or appertaining, the appellant assuming in consideration thereof all the debts and obligations of the consolidated company; that the appellant thereby succeeded to the rights of the consolidated company, under its contract with the State, to fix such reasonable rates of fares for the transportation of passengers as would enable it to realize a profit of not less than 15 per cent. per annum of its capital actually paid in.

That the road of said consolidated company has been completed for five years, and has never earned during any year profits to exceed 3 per cent. on the capital actually paid in, and that neither of the consolidating roads had earned profits during any year in excess of such rate; that the net earnings of said consolidated road for the next two years would not exceed 3 per cent. on the capital actually paid in, or on the amount actually expended on the consolidating lines; and that, if appellant is required to charge no more than three cents per mile for the carriage of passengers on said line of railway, its earnings will be so reduced that no profit whatever will inure to its owners, and such earnings will not pay reasonable interest on the fixed indebtedness actually incurred in constructing the road.

That the formation of the original company, its consolidation with others and the sale by the consolidated company, each and all constitute contracts between the State and said several companies, entered into upon the faith that each of said several companies should have the right to fix its rates for the carriage of passengers at any sum it might deem proper which would not produce an annual net profit on the capital actually paid in, to exceed 15 per cent.; that the act in question alters the said several contracts, and is in violation of section 10, article 1, of the Federal constitution.

That, by section 6, article 12, of the constitution of Arkansas, in force at the several dates aforesaid, it is provided that no charter of any corporation shall be altered, revoked,

annulled or repealed in such a manner as to do injustice to the corporators, and that the act is in violation of said provision.

That the line on which the stations named are located contains heavy grades, many cuts and fills, bridges, trestles, embankments and tunnels, the construction of which cost, and the maintenance of which does and will continue to cost extraordinarily and unusually large sums of money, and that it is reasonable and just to charge five cents per mile for carrying passengers over said line; that to limit its passenger rate to three cents per mile takes its property without compensation, in violation of the fifth and fourteenth amendments to the Federal constitution.

That it is special legislation, and discriminates against the defendant in this, that it permits a company operating seventy-five miles of road or less to charge five cents per mile passenger fare, but prohibits a company operating more than that length of road from charging that amount for a passage not exceeding that distance, in violation of article 2, section 18, of the State constitution, and of section 1 of the fourteenth amendment to the Federal constitution. stitution.

That the defendant's road is made up of roads that formerly belonged to different companies, and the stations named are situate on a line which, as formerly owned, was less than seventy-five miles in length; that therefore the former owner might have charged five cents per mile fare, and the appellant as its successor acquired the right to make the same charge.

That, before the consolidation of the companies before named, the St. Louis, Arkansas and Texas Railway Company in Arkansas, for the purpose of constructing its road, mortgaged its property to secure bonds, which were placed on the market and sold to purchasers, who in good faith relied upon the observance on part of the State of its contract with the company relative to fixing its passenger rates; that said bonds are unpaid, and if the appellant is permitted

to charge no more than three cents per mile for carrying passengers, the earnings of the road of the original company will be insufficient to pay the interest on said bonds, and default will be made therein; that the act is therefore unconstitutional.

5. Constitutional law—Regulation of passenger rates. In the view that we have taken of the law, it will be unnecessary to go into the discussion of the act, as affected by the provisions of the Federal constitution, relied upon by the appellant. When the St. Louis, Arkansas and Texas Railway Company in Arkansas was organized, the constitution of the State contained the following provisions:

Section 6, article 12. "Corporations may be formed under general laws, which laws may, from time to time, be altered or repealed. The general assembly shall have the power to alter, revoke or annul any charter of incorporation now existing and revocable at the adoption of this constitution, or any·that may hereafter be created, whenever, in their opinion, it may be injurious to the citizens of this State, in such manner, however, that no injustice shall be done to the corporators."

Section 11, article 12. " Foreign corporations may be authorized to do business in this State, under such limitations and restrictions as may be prescribed by law. Provided, That no such corporation shall do any business in this State, except while it maintains therein one or more known places of business and an authorized agent or agents in the same upon whom process may be served; and, as to contracts made or business done in this State, they shall be subject to the same regulations, limitations and liabilities as like corporations of this State, and shall exercise no other or greater powers, privileges or franchises than may be exercised by like corporations of this State, nor shall they have power to condemn or appropriate private property."

Those provisions have ever since been and now are a part of the fundamental law of the State. They entered into and became a part of the contract between the State and the corporations concerned in this cause. By their terms

the State was authorized to alter, revoke, annul or repeal all charters of corporations thereafter created in this State, whenever, in the opinion of the general assembly, such charter is injurious to citizens of the State. The only limitation upon the power is that it shall not be so exercised as to do injustice to the corporators. It is provided that foreign corporations may be admitted to do business in the State upon certain conditions, and that upon compliance therewith they shall conduct their business subject to the same regulations, limitations and liabilities as like corporations of this State, and shall exercise no other or greater powers, privileges or franchises than may be exercised by like corporations of this State.

The appellant purchased its line in this State subject to the provisions just mentioned. Though the statute then in force for the regulation of rates to be charged for the transportation of passengers (Mansf. Dig., sec. 5473) permitted a higher rate to be charged than that allowed by the act in question, the appellant knew that all such acts were subject to legislative change. Thus warned, it elected to come into the State to operate a railroad. It thereby undertook and became bound to do it according to the terms and conditions imposed upon domestic corporations. It bound itself to the State by contract that it would conform to such rates of charges as the State might fix, provided they worked no injustice to its corporators. If the act in question violates that provision, the act must fail; otherwise it must stand. To all other objections that may be urged against the act, it is sufficient to reply: *Consensus facit jus.* We therefore pass without discussion the clauses relied upon in the Federal constitution, and address ourselves to the single inquiry, Do the allegations of the answer disclose that the act is unjust to the incorporators of the appellant?

For the purpose of this case we have not felt called to decide whether the question of the justice or injustice of the act is political and for the sole determination of the general assembly, or judicial and subject to be investigated in the

courts. Nor have we considered how far the determination of that question is controlled by the recent decisions of the Supreme Court of the United States, in what is known as the Minnesota railway cases. *Chicago, etc. Ry. Co.* v. *Minnesota,* 134 U. S., 418; *Minneapolis Ry. Co.* v. *Minn., id.,* 467. We treat it as a question within the cognizance of the court, but reserve a decision thereon until a case is presented which calls for it.

We are of opinion that the answer and argument in its support rest upon erroneous conceptions of the law.

6. Consolidated railway—Regulation of tolls.

It appears from the answer that the appellant operates a continuous line of railroad from Fort Smith in this State to the City of St. Louis in Missouri. That the line, as owned and operated when the act in question passed, comprises a road constructed by the appellants and one purchased by it, which latter was made up by consolidating the roads of three different companies. The transportation for which the charges complained of were made was over that part of appellant's road which was formerly a part of one of the consolidating roads. The answer seeks to test the justice of the act, not by its effect on the net earnings of the entire road of the appellants, but by its effect upon the net earnings of that portion of its road acquired by purchase, as well as of that part formerly owned by one of the consolidating companies. But that is not the correct test. The appellant cannot claim the right to earn a net profit from every mile, section or other part into which its road might be divided, nor attack as unjust a regulation which fixed a rate at which some such part would be unremunerative. It can only claim a profit from the operation of its entire line, and attack as unjust an act that denies it the right to fix such rates as will yield a profit upon its aggregate business. The corporations owning the several parts of the road as to which it is charged that the act operates unjustly were dissolved years before it was passed. As to them it could not operate unjustly, and in their behalf no cause of complaint can exist. The lines, though once independent, are now

parts of a whole, and any division of it into its original parts
for the purposes of the act in question is arbitrary.    There
is as much reason to divide the line according to sections
or stations, or into divisions of a designated mileage, and
demand the right to charge for service upon each part a
rate sufficient to make the operation of that part alone, in-
dependently of other parts, remunerative.    If an act were
to be thus tested, it would be necessary in each case to
ascertain what part of the line was included in the trip, and
then determine what charge was necessary to make the
business of that part profitable.    That would involve the
ascertainment of what expense was incurred in operating the
particular division alone ; but as there are other general ex-
penses, not incurred in operating any other division more
than the one in question, it would be necessary to compute
them and apportion a just part to the designated division.
It would then be necessary to ascertain what the road could
earn at the rate fixed from receipts arising exclusively from
the business of the particular part, and its *pro rata* of re-
ceipts from business done in part over it and in part over
other divisions.    It could then be seen whether the expense
of operating the particular division exceeds the receipts
under the rate proposed.    In what proportion the several
parts should share with others in the expenses and receipts
in which they participated it would be difficult to determine.
In fact the problem proposed would be difficult, if it did not
baffle solution.    If upon the examination it was ascertained
that division A could earn a profit at a rate of three cents
per mile for passengers, as to it the act would be valid; but
if it was ascertained that division B would sustain a loss
unless permitted to charge five cents per mile, the act as to
it would be invalid.    If it could be conceived that, with
such an issue to be submitted to a jury, a decision would
ever be reached in two different causes, a remarkable result
might be anticipated.    It would then be judicially deter-
mined that a law fixing three cents as the maximum would
be constitutional as regulating rates from Fayetteville to the

S C—8

next station south, but unconstitutional as regulating the rates from Fayetteville to the next station north. Such a condition would be rendered improbable, only because it is exceedingly improbable that two cases would be prosecuted to a termination in the life of any one person.

7. Classification of railroads —Effect of act upon members of a class.

We think it must be evident that, to the extent that the question of injustice is to be determined by the effect of the act upon the earnings of the appellant, the earnings of its entire line must be estimated as against all its legitimate expenses, under the operation of the act. But we think that a more enlarged scope should be given the inquiry, to decide the question properly; and the justice of the act should be determined by its effect upon classes, and not by its effect upon single members of classes. The parent company was organized and the appellant began its business in this State after the adoption of a policy by the State with reference to corporations that marked a change in that regard. It had been usual to create corporations, grant privileges and limit powers by special act of the legislature; it was then provided by the constitution that no special act of incorporation should be passed, and that all corporations should be formed under general laws. In pursuance of the changed policy, the act was passed providing for the organization of railway companies. As the powers of corporations were conferred and defined by general laws, so the State indicated its policy to regulate their enjoyment and exercise by laws likewise general. The provision relied upon by the appellant, from the act of July 23, 1868 (Mansf. Dig., sec. 5473), authorizing railway companies to regulate passenger fares, was general in its terms and applied to all railroads in the State. The act in question, though it classifies roads for the purpose of regulation, is general; for it prescribes the same regulations as applicable to each member of a class. It would therefore be unreasonable to test the rate fixed for any class by its effect upon a single member of the class. One member might be so situated that at a given rate of fares its earnings would be large;

while another member, at the same rate but affected by different conditions, perhaps temporary, such as destructive competition, wasteful management, or limited business, could not earn expenses. Neither of said members, the one enjoying favorable circumstances nor the one suffering from unfavorable circumstances, would furnish the proper criterion by which to judge the rate proposed; whether it would be just or unjust, should be determined by its effects upon those operating under usual and ordinary conditions. The appellant nowhere alleges that the rate fixed by the act in question is unjust as applied to other roads in its class, or that it cannot be adopted by them without any unjust impairment of their earnings. We think it follows, if roads may be classified for regulation, that the justice or injustice of the regulation must be determined with reference to its effect on the class and not a particular member of it. Any other rule would lead to confusion—almost chaos—in the law. An act held valid as to one member of a class might be held invalid as to another, and no adjudication would remove or lessen the uncertainties as to the validity of an act. We do not mean to imply that the act under the construction given it is free from the objection that the question of its legality is undetermined after the adjudication of any one case. If the question of constitutionality is to be determined by a judicial inquiry into the reasonableness of the limit prescribed, it is obvious that the result in each case would depend upon the facts developed in it and the conclusions drawn therefrom, thus varying as the facts in proof varied, and as different trial tribunals might differ in viewing them. It would be better for all concerned, the public and the corporations, if the law provided some means for testing the reasonableness of the rates prescribed, before they were to become operative, in a proceeding in which the corporations contesting it and the public, through its representatives, would have an opportunity to be heard. The final determination in such a proceeding should be conclusive as to that fact, and determine the legal status of the act; and if

it were sustained, a defense of its unreasonableness should not be entertained in an action like this. The plaintiff in an action of this character has not the facilities or interest to present the matter as it should be in a controversy so wide in its scope, affected by circumstances so universal and complex. The burden of the litigation is too great for the return. While we think the law should be as we have indicated, we cannot conclude that it is; although a somewhat similar principle was contended for by the late Justice MILLER, in a separate opinion in the Minnesota cases.

It was ruled in *Dow* v. *Beidelman*, 49 Ark., *supra*, that the classification of roads for regulation of rates was proper.

Affirm.