Lee REAVES et al *v.* Guy
Hamilton JONES Sr.

74-238                                    515 S.W. 2d 201

Opinion delivered November 12, 1974

*John Harmon* and *Phil Stratton*, for appellants.

*Jim Guy Tucker*, Atty. Gen., by: *Lonnie H. Powers*, Deputy, for appellee.

LYLE BROWN, Justice. On August 1, 1974, the Arkansas Senate voted to "expel and/or disqualify" Senator Guy Hamilton Jones, Sr., from that body. Jones brought this suit against Lee Reaves, Secretary of the Senate, and various other state officials, to prohibit those officials from acting on the assumption that the expulsion was valid. For example, Jones sought to compel the State Auditor to continue paying Jones' salary, and sought to prohibit the governor from calling a special election to fill a vacancy. The trial court held void the attempted expulsion of Jones. The principal findings of the trial court were that the senate did not follow the procedures outlined in House Concurrent Resolution 14; that Jones had no notice of the session at which he was expelled; and that his right to due process was in other respects violated. We are of the unanimous opinion that the trial court was in error and that the expulsion of Jones must be sustained.

Jones, a legislative veteran, was elected to the Senate in November 1972. In December 1972, he was found guilty in the United States District Court for the Eastern District of Arkansas of filing fraudulent income tax returns and making and subscribing to false returns. In January 1973, before being sentenced, Jones was seated in the senate. On April 3, 1973, he was fined $5,000 and placed on probation for a period of three years. In May of that year the Arkansas At-

torney General issued an opinion that Jones had been convicted of an infamous crime under Ark. Const., art. 5, § 9 and was no longer qualified to serve as a senator.

On July 9, 1974, Jones was given notice that his qualifications to serve had been challenged as a result of the recited conviction, and that the senate would conduct a hearing. The senate adopted rules of procedure for the hearing and the same was conducted. The motion to expel failed of adoption. The senate thereupon recessed under the provisions of House Concurrent Resolution 14 to reconvene on August 1, 1974. More will be said later about that resolution but suffice it for the present to say that at the meeting held on August 1, a motion was made to expunge the record by which the expulsion motion of July 12 failed to carry. That motion carried. A motion was then made and carried by more than two-thirds vote that Senator Jones be expelled and/or excluded from the senate. This suit for mandamus and declaratory judgment followed.

The fundamental privileges and immunities possessed by the two houses of the legislature are imbedded in two provisions of our constitution. Our principal reason for rejection of Senator Jones' contentions is founded on those provisions. Ark. Const., art. 5, § 11 provides:

> Each house shall appoint its own officers, and shall be the sole judge of the qualifications, returns and elections of its own members.

In *Evans* v. *Wheatley*, 197 Ark. 997, 125 S.W. 2d 101 (1939), Evans appeared before the Arkansas Senate in 1937 and challenged the right of Walter Wheatley to serve in that body. The basis of the challenge was that Wheatley had previously been convicted of violating the State's "bone dry" law and sentenced to one year in the penitentiary. The senate seated Wheatley. Then in 1938 Wheatley was again elected to the senate and the latter body again seated him. Appellant brought suit in the Pulaski Circuit Court to have Wheatley ousted and to restrain the auditor and treasurer from issuing and cashing warrants for Wheatley's services. We held that "qualifications" in art. 5, § 11, include "eligibility", and that the court was without jurisdiction because the senate is the

sole judge of the eligibility or qualifications of its members:

> By the above provision, art. 5, § 11 of the Constitution, a clear mandate is given to each house of the General Assembly to be the sole judge of the qualifications of its members, and the courts of this state have no authority or jurisdiction to question the wisdom of their actions in seating or refusing to seat one elected to membership.

Then we have the case of *Irby* v. *Barrett*, 204 Ark. 682, 163 S.W. 2d 512 (1942). There the chairman and the secretary of the state democratic committee refused to certify Irby as a candidate for senator, on the ground that he had been convicted of embezzlement. We held such action to be without authority; that notwithstanding Irby had been held by this court ineligible to hold the office of county judge, the senate would not be bound to follow that opinion as respects election to the senate. That is, of course, because the senate is the sole judge of the qualifications of its members.

The constitution, art. 5, § 12, provides, among other things, that each house has the power to determine its own rules of proceedings. In that connection we have two landmark cases, *St. Louis & S.F.R. Co.* v. *Gill*, 54 Ark. 101, 15 S.W. 18 (1891); *Bradley Lumber Co.* v. *Cheney*, 226 Ark. 857, 295, S.W. 2d 765 (1956).

In *Gill* it was alleged that certain legislation affecting railroads was not passed in accordance with the joint rules of the general assembly. We said: "The joint rules of the general assembly were creatures of its own, to be maintained and enforced, rescinded, suspended, or amended, as it might deem proper. Their observance was a matter entirely subject to legislative control and discretion, not subject to be reviewed by the courts."

The decision in *Bradley Lumber Co.* reiterates the holding in *Gill*. Under the house rules, action in receding from an amendment was required by its own rules to be recorded in the journal. The action of the house on an amendment was not recorded and that raised the contention that the act was invalid. We said: "Subject to the restrictions imposed by the constitution each branch of the legislature is free to adopt any

rules it thinks desirable. It follows, both as a matter of logic and as a matter of law, that each house is equally free to determine the extent to which it will adhere to its self-imposed regulations."

We return to a discussion of HCR 14. Jones contends that under that resolution he was entitled to have notice and that the failure to give notice made the proceedings void. He further avers that the failure to give notice violated his constitutional right to procedural due process.

HCR 14 provided that both houses would recess at the close of business on Friday, July 12, 1974, and should reconvene on Thursday, August 1, 1974; that each house was authorized to convene from time to time as desired; that in the interim all bills passed would be checked for errors; that if errors were found the speaker of the house and the president of the senate would notify the members that the reconvening of the full membership would be necessary for the sole purpose of correcting errors in bills and consideration of vetoed bills; that unless such notice was given then five members of each house could reconvene on August 1 and adjourn *sine die.*

Appellee's argument is without merit. Art. 5, § 12, and the decisions we have cited thereunder come into play. First, the rule adopted by the resolution was a matter of internal rule-making and could be changed at will. Secondly, the general assembly did not, either on April 12, or at any time thereafter until after the expulsion vote on August 1, adjourn *sine die.* The meeting on August 1 was clearly authorized, and on the basis of the constitutional rule-making independence it was the prerogative of the senate to act on such matters as it desired just so long as any action taken was not prohibited by the constitution.

We are not impressed by the argument of due process and res judicata. The latter is invariably tied into the civil processes of our courts and we are nowhere cited any authority for restricting the legislature in its power to amend, modify, or in fact obliterate its previous actions. As to the due process argument, the constitution, art. 2, § 8 says no man shall be deprived of life, liberty or property without due

process of law. We hold that nothing in that wording supports appellant's argument. We have many times held that the right to hold office is not a property right. *McFarlin* v. *Kelly*, 246 Ark. 1237; 442 S.W. 2d 183 (1969).

Jones insists that the proceedings of July 12 were a bar to any subsequent effort to reconsider petitioner's qualifications, arguing that it constituted double jeopardy. He bases his argument on the provision of const., art. 5, § 12 which says a legislative member cannot be expelled twice for the same offense. The quick answer to the argument is that the vote of July 12 did not expel Jones. The vote on August 1 was the first expulsion.

Jones next contends that Governor Bumpers was absent from the State on August 1 and that Lieut. Gov. Bob Riley became acting governor and therefore could not constitutionally preside over the senate on that date. Mr. Riley was on August 1 at least de facto president of the senate; actions of a de facto officer are not open to question in a collateral proceeding. *Faucette, Mayor* v. *Gerlach*, 132 Ark. 58, 200 S.W. 279 (1918). The perfect answer to the argument is found in *Simon* v. *State*, 86 Ark. 527, 111 S.W. 991 (1908). There the president of the senate continued to attest bills while performing duties as governor. We said he was de facto president of the senate and his actions were valid.

Jones relies on two United States Supreme Court decisions, *Bond* v. *Floyd*, 385 U.S. 116 (1966) and *Powell* v. *McCormack*, 395 U.S. 486 (1969). Bond met all requirements of a state legislator but the house of representatives refused to seat him on the ground that he could not conscientiously take the oath of allegiance. The court held that the action amounted to adding a standard which violated Bond's First Amendment rights to freedom of speech. In Powell's case the house voted to exclude Powell because he allegedly misappropriated public funds and abused the process of New York courts. The court said Powell met all the qualifications prescribed by Const., art. 1, § 5, and Congress was limited to considering the qualifications expressly prescribed.

We find no analogy between the case before us and the two cited cases. In fact the question foremost in our minds in

a consideration of this case has been whether the senate exceeded its constitutional powers. We find no such abuse and therefore we are without authority to reverse the senate.

We agree with Jones that the trial court had jurisdiction because it was necessary to determine whether the senate was lawfully in session as prescribed by the organic law as expressed in the constitution.

The cause is reversed and remanded with directions that the trial court enter an order not inconsistent with our opinion. In view of the fact that a special election will be needed to afford representation to the 21st Senatorial District in the coming general assembly an immediate mandate shall issue.

Reversed and remanded.