The Honorable Jay Bradford State Senator Post Office Box 8367 Pine Bluff, Arkansas 71611
Dear Senator Bradford:
This is in response to your request for an opinion on several questions relating to Senate Concurrent Resolution No. 1 of 1994 (2nd Ex. Sess.) ("SCR 1"), which purports to amend Section 24 of the Joint Rules of the Arkansas Senate and House of Representatives to provide:
 (a) Except as provided in subsection (b), no action may be taken in committee or on the floor of either house on any bill that provides for licensure of any profession, occupation or class of health care providers not currently licensed or expands the scope of practice of any profession, occupation or class of health care providers unless the Joint Interim Committee on Public Health, Welfare and Labor, at least three (3) months prior to convening of the next legislative session has initiated a study of the feasibility of such legislation and reported its findings to the General Assembly.
 (b) A bill providing for licensure of any profession, occupation or class of health care providers not currently licensed or expanding the scope of practice of any profession, occupation or class of health care providers may be acted upon without the initiation of a feasibility study required in subsection (a) upon a two-thirds vote of the Senate Public Health, Welfare and Labor Committee membership if the bill is a Senate bill or upon a two-thirds vote of the House Public Health, Welfare and Labor Committee membership if the bill is a House bill.
Your questions are:
 1. Will Section 24 of the Joint Rules, as purportedly amended by SCR 1, be in effect when the 81st General Assembly convenes in regular session?
 2. Should the 81st General Assembly in regular session readopt Section 24 of the Joint Rules, as it reads in SCR 1, will it have effect with regard to bills introduced in such regular session?
 3. No matter the answer to the above questions and assuming the effectiveness of Section 24 of the Joint Rules, as it reads in SCR 1, does its content violate the United States Constitution or Arkansas Constitution or any federal or Arkansas statute?
 4. Through the adoption of Joint Rules, may the General Assembly lawfully require that any bill dealing with the licensure of health care providers be submitted for consideration or study by a joint interim committee prior to the next legislative session or else not be acted upon during such session or not be acted upon except upon a two-thirds or other supermajority vote of a legislative committee?
With respect to your first question, it is my understanding that no resolution adopting Joint Rules was passed by the Eightieth General Assembly. That General Assembly did, however, pass at least one resolution purporting to amend the "Joint Rules of the House and Senate of the Eightieth General Assembly." See HCR 1007 of 1995. The legislature's adoption of HCR 1007 suggests that the members believed some set of Joint Rules, presumably those adopted by a previous General Assembly, to be then in effect. The adoption of HCR 1007 therefore appears to suggest a legislative intent that Joint Rules, once adopted, are effective until amended or rescinded, even during sessions of subsequent General Assemblies.
A contrary intention, however, also appears. I have been provided copies of Senate Concurrent Resolutions of the 75th, 76th, 77th, 78th, and 79th General Assemblies adopting Joint Rules of the Senate and House of Representatives. Each such resolution appears to adopt Joint Rules only for the sessions of the General Assembly in office when the resolution was adopted. For example, SCR 5 of 1993 states that "[t]he following are hereby adopted as the Joint Rules of the Senate and the House of Representatives of the Seventy-Ninth General Assembly." [Emphasis added.] By reciting the numbers of the General Assembly for which each set of Joint Rules was adopted, the resolutions suggest that the legislature did not intend that its Joint Rules would remain in effect during sessions of subsequent General Assemblies. Such an intent would be consistent with the logical conclusion that each General Assembly should determine its own rules, as each is in many ways a new body rather than a continuation of the previous General Assembly.
Our constitution empowers each house of the General Assembly "to determine the rules of its proceedings" and "enforce obedience to its process." Ark. Const. art. 5, § 12. The Supreme Court of Arkansas has repeatedly held that this provision means that the General Assembly has complete discretion, subject only to constitutional limitations, to make and interpret its rules. For instance, the court in St. Louis and SanFrancisco Ry. Co. v. Gill, 54 Ark. 101, 105-106, 15 S.W. 18 (1891), addressing a defense based upon a statute's alleged invalidity for the legislature's failure to follow its rules in enacting it, stated:
 The joint rules of the general assembly were creatures of its own, to be maintained and enforced, rescinded, suspended, or amended, as it might deem proper. Their observance was a matter entirely subject to legislative control and discretion, not subject to be reviewed by the courts.
Likewise, in Bradley Lumber Co. of Ark. v. Cheney, 226 Ark. 857,859-860, 295 S.W.2d 765 (1956), the court stated:
 Subject to the restrictions imposed by the constitution each branch of the legislature is free to adopt any rules it thinks desirable. It follows, both as a matter of logic and as a matter of law, that each house is equally free to determine the extent to which it will adhere to its self-imposed regulations. For this reason it was held in Railway Co. v. Gill, 54 Ark. 101, 15 S.W. 18, 11 L.R.A. 452, that the validity of an act is not affected by the legislature's disregard of its own rules. . . .
Finally, in Reaves v. Jones, 257 Ark. 210, 515 S.W.2d 201 (1974), the court, citing Gill and Cheney, held that a rule of the General Assembly could be changed at will.
Due to the conflicting indications of legislative intent, noted above, with respect to the continuing validity of the Joint Rules, and the General Assembly's discretion to make, interpret, and enforce its own rules free of interference from the other branches of government, I am unable to render an opinion as to whether Section 24 of the Joint Rules will be in effect when the Eighty-first General Assembly convenes.
Because it requests an interpretation of the retroactive effect of Section 24, I am also unable to render an opinion in response to your second question. Again, subject only to constitutional limitations, it is for the General Assembly to determine what its rules mean, and whether and how they will be enforced.
With respect to your third question, you ask that I consider the following:
 (a) the content of Section 24 refers to actions necessary to be taken at least three (3) months prior to the convening of the session; (b) the requirements found in Section 24 of the Joint Rules are not set forth by law or the Arkansas Constitution and such requirements are not applied by any section of the Joint Rules to bills addressing subjects not included in Section 24; (c) a bill sponsor may have taken office for the first time at the commencement of the 81st General Assembly; (d) a citizen and his legislative sponsor wishing to gain passage of a bill which addresses the subject matter found in Section 24 will not enjoy rights equal to another citizen and his legislative sponsor seeking passage of a bill which addresses subjects different from those found in Section 24; and (e) Section 24 does not specify what is meant by the terms "initiated a study of the feasibility of such legislation and reported its findings to the General Assembly" or whether the bill subject to such study and report must be identical to the bill ultimately introduced and considered during the next session.
Your request does not specify the provision(s) of law, if any, under which you believe the rule may be invalid. It is impossible to state definitively that the rule would be held valid in the face of all conceivable challenges, many of which might be based upon legal theories and provisions that may not have occurred to this office. In my opinion, however, the content of Section 24 does not violate the equal protection clause of the constitution of either the United States or Arkansas, the provisions of law suggested by item (d) above. In my view, no suspect class or fundamental right is affected by the classification made by Section 24. Accordingly, the rule would be reviewed by a court using the rational basis test, recently described by the Supreme Court of Arkansas as follows:
 [T]he Equal Protection clause does not preclude all statutory classifications. Hamilton v. Hamilton, 317 Ark. 572, 879 S.W.2d 416
(1994). Indeed, we presume the statutes passed by the General Assembly are not unconstitutional and will uphold a classification in the face of an equal protection allegation if there is any basis for the classification. McFarland v. McFarland, 318 Ark. 446, 885 S.W.2d 897
(1994). A party challenging a statute must bear the burden of proving it unconstitutional. Beck v. State, 317 Ark. 154, 876 S.W.2d 561
(1994). The appellant has the burden of proving that the act is not rationally related to achieving any legitimate objective of state government under any reasonably conceivable state of facts. Reed v. Glover, supra.
 We merely consider whether any rational basis exists which demonstrates the possibility of a deliberate nexus with state objectives, so that the legislation is not the product of utterly arbitrary and capricious government purpose and void of any hint of deliberate and lawful purpose. Reed v. Glover, 319 Ark. 16, 889 S.W.2d 729 (1994).
Cook v. State, 321 Ark. 641, 648, 906 S.W.2d 681 (1995).
I have no way of knowing the actual objectives of the rule, but it is conceivable that the General Assembly determined that, since the public health is at stake, proposed legislation relating to health care providers should be subject to more study and scrutiny, or greater consensus in committee, than proposed legislation relating to, say, financial regulation. The rule would, in my view, be found to be rationally related to the achievement of that goal.
Our constitutions also contain guarantees of the right of free speech and the related right of the people to petition the government. U.S. Const. amend. 1; Ark. Const. art. 2, §§ 4, 6. In my opinion, Section 24 does not violate these rights. The people remain free to speak out for or against changes in the law relating to health care providers and to petition members of the General Assembly to make or refrain from making such changes. In my opinion, the rule affects only the procedures to be followed in making such changes. While Section 24 may seem severely restrictive, it is not the only Joint Rule in effect from time to time that has imposed procedural barriers to changes in the law. See, e.g.,
Joint Rules of the Seventy-Ninth General Assembly, §§ 12, 15, 16, and 17, as adopted by SCR 5 of 1993.
Finally, your request, in questioning the proper interpretation of Section 24, suggests that the rule might be too vague to comply with due process requirements. Our constitutions prohibit the deprivation of life, liberty, or property without due process of law. U.S. Const. amend. 14, § 1; Ark. Const. art. 2, § 8. In my opinion, the rule is not invalid under these provisions because no person's life, liberty, or property is at stake in connection with the operation of Section 24. The vagueness doctrine exists only as a component of due process requirements, and is applicable only where an interest protected under the due process clause is implicated. Maroney v. University Interscholastic League,764 F.2d 403 (5th Cir. 1985), citing Hoffman Estates v. Flipside,Hoffman Estates, Inc., 455 U.S. 489 (1982).
Consistent with the conclusions stated above, it is my opinion that the answer to your fourth question is "yes."
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh