The Honorable Jim Argue State Senator 5905 Forest Place #210 Little Rock, Arkansas 72207-5245
Dear Senator Argue:
This is in response to your request for an opinion on the following question:
 Does the Senate and the House of Representatives have the authority to meet and amend Senate and House Rules, including Joint Rules, when the General Assembly is not convened for a regular or extraordinary session?
The answer to this question is somewhat unclear under Arkansas law, and is difficult because the question, depending upon the facts under which it is presented, may be nonjusticiable by a court of law. In most cases, the rules of the Senate and House are matters of determination for those houses alone, and courts will not interfere or pass upon their validity or observance, absent some constitutional deficiency. The Arkansas Constitution does not specifically address whether the membership of the House and Senate must be formally in session to take action with respect to its rules. One Arkansas case touches upon the subject, and indicates that the general assembly must be properly in session to take action to expel a member, but it cannot be said to be controlling on your question. It appears that the question you have posed cannot be answered in the abstract, but would have to be decided in the context of specific facts related to an attempted exercise of power under the rules.
Some explanation is necessary. Arkansas Constitution, art. 5, § 12
provides in pertinent part that:
 Each house shall have the power to determine the rules of its proceedings; and punish its members or other persons for contempt or disorderly behavior in its presence; enforce obedience to its process; to protect its members against violence or offers of bribes or private solicitations; and, with the concurrence of two-thirds, expel a member, but not a second time for the same cause. [Emphasis added.]
It has been stated with respect to the first clause of this provision that: "The joint rules of the general assembly were creatures of its own, to be maintained and enforced, rescinded, suspended, or amended, as it might deem proper. Their observance was a matter entirely subject to legislative control and discretion, not subject to be reviewed by the courts." See Reaves v. Jones, 257 Ark. 210, 515 S.W.2d 201 (1974),quoting St. Louis S.F.R. Co. v. Gill, 54 Ark. 101, 15 S.W. 18 (1891). The Reaves court also quoted from Bradley Lumber Co. v. Cheney,226 Ark. 857, 295 S.W.2d 765 (1956) to the effect that: "Subject to the restrictions imposed by the constitution each branch of the legislature is free to adopt any rules it thinks desirable." These cases do not expressly address whether the legislature must be in session to make or amend rules, and thus do not indicate whether this is a constitutional requirement.
The legislature must, of course, be properly in session to enact laws. Article 5, section 1 of the Arkansas Constitution states that the "legislative power of this State shall be vested in a General Assembly, which shall consist of the Senate and the House of Representatives." Section 5 of the same article provides that: "The General Assembly shall meet at the seat of government every two years on the first Tuesday after the second Monday in November until said time be altered by law."[1]
Section 17 of that article provides that: "The regular biennial session shall not exceed sixty days in duration, unless by a vote of two-thirds of the members elected to each house of said General Assembly. Provided, that this section shall not apply to the first session of the General Assembly under this constitution, or when impeachments are pending." In addition, the Governor is given the sole authority under the Arkansas Constitution of calling extraordinary sessions of the legislature. Article 6, § 19 of that document provides that: "The Governor may, by proclamation, on extraordinary occasions convene the General Assembly at the seat of government . . . and he shall specify in his proclamation the purpose for which they are convened, and no other business than that set forth therein shall be transacted until the same shall have been disposed of. . . ."
There appear to be at least some instances, however, when the legislature may convene to address internal non-law-making business, when not in session. For example, Article 5, section 18 provides for the appointment of presiding officers of each house. It provides that "Each house, at the beginning of every regular session of the General Assembly, and whenevera vacancy may occur, shall elect from its members a presiding officer to be styled, respectively, the President of the Senate[2] and the Speaker of the House of Representatives." (Emphasis added.) This provision would presumably allow either house to convene to elect a presiding officer to fill a vacancy without being in session. In addition, it has been stated that:
 The General Assembly does a great deal of its work through its committees and the Legislative Council, which meet regularly throughout the year. With this general practice there is no legal quarrel. However, a session of the General Assembly is one essentially involving the function of considering and passing legislation; it necessarily involves the entire legislative branch of government, and in that regard the Constitution limits the meeting of the General Assembly to a regular biennial session that can only be extended to finish legislative work — passing on legislation.
Wells v. Riviere, 269 Ark. 156, 165, 599 S.W.2d 375 (1980).
This passage seems to equate the necessity of a "session" of the legislature to its essential law-making activities.
One statute of Arkansas is of some applicability. Section 10-3-212 of the Arkansas Code Annotated provides in pertinent part that:
 (a) The Rules Committee of the Senate and the Rules Committee of the House of Representatives are authorized to meet jointly or separately at any time during the interim between legislative sessions as those committees shall deem necessary or desirable to review the Senate Rules, House Rules, and the Joint Rules of the Senate and House of Representatives and to make recommendations for revisions in the rules or new rules as the committees shall deem appropriate.
This statute seems to contemplate only that recommendations be made by the respective committees for adoption at a later time, presumably at a session. The authority granted these committees, however, cannot be said to control the question of whether the membership of either or both houses can meet to make amendments to the joint rules at a time other than a session. Such a question depends upon whether any provision of the Arkansas Constitution prohibits that action.
It is stated generally that:
 The power of a house of a legislature to determine its rules of proceedings is a continuous power. It can always be exercised by the house and is absolute and beyond the challenge of any body or tribunal if the rule does not ignore constitutional restraints or violate fundamental rights.
Mason's Manual of Legislative Procedure, § 22 part 3. See alsogenerally, 81A C.J.S. States § 48, and § 52; Sutherland, StatutoryConstruction, §§ 7.01, 7.02. It has been stated by other authorities, however, that "a legislative body has no inherent power to convene itself in special or extraordinary session for any purpose. It enjoys such power only when so endowed by the organic law. When the authority is granted by the Constitution it must be exercised strictly in accord with the stipulations of the organic grant." Advisory Opinion to the Governor,95 So.2d 603 (Ala. 1957). It has also been stated, to quote a headnote, that: "The Senate has no power to convene itself to pass on [the] Governor's recess appointments . . . in view of constitutional provision that in effect rests the matter of special sessions exclusively in the Governor's judgment and discretion. . . ." Walker v. Baker,145 Tex. 121, 196 S.W.2d 324 (1946). See also 81A C.J.S. States, § 49(b) as to power of legislature to convene itself.
The precise question you have posed does not appear to be resolved by any controlling or helpful legal authority. It appears to be the normal procedure for each house of the general assembly to adopt rules of its proceedings at the beginning of each regular session. See generally,
Cushing, Elements of the Law and Practice of Legislative Assemblies inthe United States of America, Chapter V, section 3, part 792 (at p. 311). No controlling law, however, addresses the circumstances under which these rules may be amended.
The Arkansas case of Reaves v. Jones, supra, comes the closest to addressing the question, but does not do so squarely. In Reaves, a state senator was expelled from the Senate and sued to challenge the expulsion, based in part on the failure of the Senate to follow its own rules in expelling him. The court rejected the challenge and upheld the expulsion, noting that the observance of the Senate rules was a matter entirely within the discretion of the Senate. There appears to have been some suggestion made by the expelled senator that the general assembly was not properly in session on the date of his expulsion. The court found that it was properly in session, noting "the general assembly did not, either on April 12, or at any time thereafter until after the expulsion vote on August 2, adjourn sine die. The meeting on August 1 was clearly authorized, and on the basis of the constitutional rule-making independence it was the prerogative of the senate to act on such matters as it desired just so long as any action taken was not prohibited by the constitution." 257 Ark. at 214. The Arkansas Supreme Court noted at the end of the case that: "We agree with [Senator] Jones that the trial court had jurisdiction because it was necessary to determine whether the senate was lawfully in session as prescribed by the organic law as expressed in the constitution." 257 Ark. at 216. The court thus indicated that if the legislature had not properly been in session when it expelled Jones, that may have provided grounds for voiding the expulsion.
Your question, however, does not involve an expulsion, but whether the rules of each house may be amended absent a properly called session. In my opinion, there will be limited instances in which this question would even be reviewable by the judicial branch. The courts, it is said, have no authority to compel action on the part of the legislature. That is, the courts would have no authority to order the legislature, or either house thereof, to disperse, once convened to amend joint rules. The authority of the courts is limited in this respect to "restraining the potency of legislative actions." See, e.g., Wells v. Purcell,267 Ark. 456, 592 S.W.2d 100 (1979) citing Watkins v. Watkins, 2 Md. 341
(1852). As stated by the Arkansas Supreme Court in Wells v. Riviere, supra: "We do not even imply that we have the authority to dictate to the General Assembly, the legislative branch of this state government, how it proceeds about its business. It can convene as it pleases. [Citation omitted.] However, whether its acts are lawful is a matter for this court." 269 Ark. at 169.
Thus, while the judicial branch cannot control the actions of the general assembly, it is empowered to pass on the validity of its actions. Id. The only respect in which the contemplated action of the General Assembly would be reviewable by the courts, and its validity thus tested, would be in the case of an attempted exercise of power under a rule thus adopted. That is, the only challenge which might be brought against the action you suggest, would be one brought by someone with standing to challenge the implementation or use of the rule against him. An example would be in the case of Reaves v. Jones, supra. If a rule adopted by either branch of the legislature while not properly in session were ultimately used or employed to take action, a challenge might arise as to the validity of the rule. Because, however, rules may be disregarded at will by the legislative body, and because many legislative actions may be undertaken even in the absence of a pertinent legislative rule, it is difficult to conclude that a court would invalidate a rule of procedure upon which any action was based. The more justiciable claim would involve whether the adverse action complained of (e.g., an expulsion or other sanction), if it occurred at other than a properly called session of the legislature, was valid. See Reaves, supra.
In conclusion, the question you have posed in not squarely addressed by Arkansas law. It appears, however, that each house of the Arkansas General Assembly is given wide latitude as to the promulgation, amendment, and observance of its own rules. A court would in all likelihood not have the power, in a wholesale fashion, to set aside a legislative attempt to amend joint rules while not in session.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] This date has been altered by A.C.A. § 10-2-101 to the second Monday in January of each odd-numbered year.
[2] Pursuant to Amendment 6, § 5 the Lieutenant Governor is now the "President of the Senate."